BOURDIN, J.
This is a case in which there was an effort in the court below, by a party claiming to be a judgment creditor of a trustee or trust fund, to charge his debt on the trust fund in the hands of the trustee, and of an assignee of the fund with notice of the trust. The case was heard on the bill, answers and exhibits, without replication to the answers, and without examination of witnesses; and the main question before us isj “What was the effect of the answers?”
There can, I think, be no doubt about the general rule under such circumstances. The allegations of fact, and denials of the answer distinctly made, must be admitted to be true. “If the answer clearly and unequivocally deny those allegations in the bill upon *which alone it can be sustained, or if the answer set up sufficient new matter in avoidance of those allegations, in either case the bill should be dismissed.” But to invoke the rule successfully, the facts constituting the equity should be plainly denied or clearly avoided. There should be no fact admitted by the answer inconsistent with defendant’s denial ; no equivocal denial, no doubtful avoidance.
My opinion is, that the answers in this case do not come up to this standard. The bill, as we have said, seeks to set up a claim by judgment against a trust fund, and charges an improper dealing with that fund by the trustee, Minor, and his co-defendant, Derrick, by which the latter, with full notice of the trust, was allowed to purchase the entire trust fund remaining in the hands of the trustee, consisting of interest bearing bonds, well secured on real estate; and the defendants are called on to disclose the discount at which the bonds were sold.
The answer of the trustee, Minor, admits in substance, if not in express terms, the character of the plaintiff’s claim; that it was a claim upon the trust fund, and that he had expected to pay it out of that fund. Derrick, the assignee, does not deny, but impliedly admits, that it was such claim; both admit the sale of the bonds by the trustee to Derrick, and Derrick admits, as the bonds themselves would show, without such admission, full notice of the trust; and that on the 15th July, 1868, he purchased of the trustee bonds belonging to the trust fund, amounting to $2,400 of principal, bearing interest from the 15th of November, 1867, for the sum of $1,941, being at a discount of $555 on principal and interest to the date of assignment, or, rather, more than twenty per cent.
To avoid the effect of these admissions, the trustee *in his answer merely says, in substance, that the necessities of the family required a sale of the trust fund, and that he had properly applied the proceeds thereof to the uses of the family, without showing how they were applied, and without showing or even alleging that he had ever kept or settled an account of his transactions as trustee; and Derrick in his answer merely says, in a very general way, that Minor, the trustee, had told him that he needed the money to meet debts contracted for his cestuis que trust; and from “all the information re *374 spondent had, he wasted to the belief” that Minor wanted the funds for proper purposes.
I am of opinion that such vague and general allegations, especially when the rights and interest of minors, who have claimed the protection of the court, are concerned, do not constitute a sufficient avoidance of the distinct and damaging admissions of the answers. The answers admit facts which constitute a prima facie devastavit by Minor, with the aid and concurrence of Derrick; and they are not avoided.
That the conversion into money by a trustee of well secured bonds belonging to a trust fund, by a sale thereof at a large sacrifice to a purchaser, with full notice of the trust, does constitute such an improper dealing with, and devastavit of, the trust subject as will render both trustee and purchaser prima facie responsible therefor, is a proposition about which, at this day, there can be no doubt. It was so held in Fisher v. Bassett &c., 9 Leigh 119, by all the judges sitting (absent Brooke and Brockenbrottgh). The reporter’s syllabus correctly states the decision on this point as follows: “An administrator takes a bond to himself individually for a debt due to his testator’s estate, payable at a distant day, and then sells this bond at a discount *of twenty-five per cent, to an as-signee, who knows that the consideration of the bond was a debt due to the intestate’s estate; but is informed, and so informed as to justify him in believing, that the administrator has acquired the full property in the bond in his own right — Held: This is such dealing with the assets of the intestate’s estate; such a concurrence of the assignee with the administrator in his appropriation of the assets to his own use, as to throw the burden of proof of the fairness of the administrator’s conduct on the assignee; and if the administrator had not purchased the claim from the next of kin, or had not made such advances as to justify him in appropriating it to himself, the as-signee cannot in equity avail himself of the transfer.” Judge Tucker, at p. 137, says, “I am clearly of opinion that unless Risher could show that Scott had fairly become the purchaser of the debt due to Robinson’s estate, or was in advance to that estate to the amount of the debt, the transfer was such a dealing with the assets as to render the transfer void. The sale of the bond at so large a discount was itself a- prima facie devastavit, and the burden of proof is upon Scott or Risher that the necessities of the estate, and not those of the administrator, "required the sacrifice.”
Parker, J., at p. 139 Ibid, says: “If the necessities of the estate did not require a sale of the bonds at so large a discount, it was a devastavit in Scott to sell to Risher. When Risher bought the bonds for so much less than their real value, under the circumstances existing in this case, he took upon himself the risk of showing either that Scott was the real owner of them, or that the necessities of the estate justified the sacrifice.” The learned judge was of opinion, however, “that Risher should be allowed to show that Scott had *a right to transfer the bonds by a settlement of the accounts of the latter;” and Judge Cabell concurred with Judge Parker on this point. The decree, which was against Risher in the court below, was reversed, and the cause sent back for a settlement of Scott’s account.
It will be observed that it was held in the case of Fisher v. Bassett &c. not to be enough to discharge Risher that he should have been informed, and so informed as to justify him in believing that Scott had the right to transfer the bonds. Whilst such belief, honestly entertained on sufficient grounds, would acquit him of intentional wrong in acquiring the bonds, it constituted no defense to the claims of those entitled to receive or charge the fund. At his own peril he was bound to know that the fact existed which he believed to exist, and to show it. The onus was on him. These principles are clearly announced in Fisher v. Bassett &c., and have been distinctly approved and reaffirmed in the subsequent case of Pinckard v. Woods &c., 8 Gratt 140, and in other cases cited by appellant’s counsel.
Pinckard v. Wood &c. was a case in which the appellant purchased bonds from an administrator at a discount of eighteen to twenty per cent, which were payable to the administrator in his character as administrator; and will be found to be directly in point.
Judge Baldwin delivering the opinion of the court, at pp. 144-’5, says of the administrator: “'If he sells such debts at a price below their value, he thereby commits a devastavit, unless he makes it appear that such sale was manifestly required by the interests of the estate: And this he can never do without showing, in the first place, that the proceeds thereof have been applied to the purposes of the ^estate. ” And on p. 145, speaking of the purchase by the appellant, of the bonds at the discount mentioned, he says: “Rrom the profit he was thus allowed to make, he had a good reason to believe that the administrator was selling them for his own individual uses; a fact which the result and the condition of the estate have abundantly shown. Under such circumstances, it was incumbent on the appellant to stay his hand until he should ascertain, by the requisite inquiries, that the sale was to be made for the purposes of the estate, and the sacrifice to be incurred was indispensably necessary to prevent some greater sacrifice.”
Nothing of this is made to appear either by the answer of Minor the trustee or of Derrick the purchaser. The trustee does not allege that he had ever settled, or even kept an account of his transactions as trustee, so as to enable him to state, with any approximation to accuracy, the condition of the trust fund; but he contents himself with alleging, in the most general and unsatisfactory terms, that the necessities of his family required the sale of the bonds, *375 and that the discount allowed was not greater, “as respondent believes, than was often and willingly allowed by business men in their transactions.” He does not aver, as a fact within his knowledge, that such discount was often allowed in business transactions, nor does he even say that he had been so informed. He states his belief only; and does not pretend that he had examined into the matter at all; or that he had endeavored and failed to do better, and was therefore compelled to make the sacrifice. Nor does his co-defendant Derrick in his answer make any distinct allegation of fact upon which it was necessary to take issue. He does not aver that he had made inquiry, diligent or otherwise, as to the condition of the trust fund, or the state of Minor’s account as trustee. *Had he done so, he would, in all probability, have found that Minor had settled no account, and was therefore in no condition to make the sale. He is content to say, in substance, that Minor told him that he needed the money to discharge obligations incurred for the family, and that “all the information that respondent had led him to the belief, that Minor wanted the fund for proper purposes; and seeing that by the terms of the trust deed aforementioned, the said Minor was vested with full power to make any disposition by sale or otherwise of these notes, so that he applied the money properly, your respondent did not hesitate to make the trade with him.”
Here there is no averment of matter of fact on which issue should be taken, but merely an allegation on the part of Derrick, that from such information as he had, he believed Minor wanted the money for proper purposes, without stating what that information was, or, indeed, that he had any, except from Minor himself. Admit it all to be true, and admitting further, what is neither shown nor even alleged, that his information was of such character as to justify the belief arrived at, still, under the principles established in the cases referred to, that belief, however it might acquit him morally, would not be enough to discharge him from legal responsibility. He was acting at his own risk, and would be bound to show that what he thus believed was in fact true. Vague impressions of that character cannot be received as a ground on which the rights of others are to be bartered away.
As to the general power of the trustee, claimed for him under the deed, to dispose of the trust subject at his discretion, it is enough to say, that whether such power exist or not, is not matter of fact but of law, to be determined by the court on the face of the deed; x"and a denial of the power, by replication to the answer, was wholly unnecessary.
I am clearly of opinion, therefore, that the failure of the appellant, Cocke, to reply generally or otherwise to the answers, does not, under the circumstances of this case, relieve the trustee and the assignee, Derrick, from the burden of showing the bona tides of the transaction, and the right of Minor to transfer the bonds at the ruinous sacrifice disclosed by Derrick.
This has not been shown; but as the right to make the transfer might possibly be established by a full disclosure of all the circumstances, and a proper settlement of the trustee’s account, as was ordered in Fisher v. Bassett, &c., my opinion is, that it was error in the court below to dispose finally of the case without ordering such account, and ascertaining clearly the condition and value of the trust fund, and the necessities of the cestuis que trust.
If the claim of the appellant, Cocke, should, on such inquiry, be found to be properly chargeable on the trust fund, and on a proper settlement of the trustee’s account there should be found in his hands, or in the hands of the defendant, Derrick, a balance, properly applicable on the principles above declared, to appellant’s claim, the same should be so applied.
But as a question has arisen whether the claim of said appellant is not in law and fact a claim against Minor, the trustee, individually, and not against the trust fund, I am further of opinion, without deciding at this time, whether it does or does not sufficiently appear on the pleadings and the face of the judgment that the claim is against the trust fund, that a further inquiry should be directed to ascertain upon what contract and on whose credit the debt to the appellant, Cocke, was contracted; and whether in taking the *bond on which the appellant’s judgment was obtained, Minor, individually, or the trust fund, was looked to for payment. Should the appellant’s claim be found on such inquiry to be due from Minor, individually, and not from the trust fund, then his bill must be dismissed with costs, but without prejudice to the right of cestuis que trust to impeach the transactions between Minor and Derrick by cross-bill in the suit or otherwise.
If, on the other hand, the debt should appear to be a proper charge on the trust fund, then the same should be dealt with as above declared. Without deciding at this time whether under the deed of trust, in the proceedings mentioned, the trustee had power, without authority from a court of equity, to dispose of any portion of the principal or corpus of the trust subject, I am of opinion that the decree complained of should be reversed with costs to the appellant, Cocke, against the appellees, Minor and Derrick; and that the cause be remanded to the circuit court, to be further proceeded in according to the principles above declared.
I am further of opinion that the appeal of Mador should be dismissed as improvidently awarded, the amount of his claim being below the jurisdiction of this court; and, furthermore, because being a defendant in the court below, there was no such i case made in the pleadings as to entitle *376 him to a decree against his co-defendants, or any of them.
ANDERSON and STAPLES, Js. concurred in the opinion of Bouldin, J.
MONCURE, P. and CHRISTIAN, J. dissented.
Decree reversed.